# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | CASE NO.: 1:24-cr-00209 |
| Plaintiff, | ) | |
| | ) | JUDGE PAMELA A BARKER |
| vs. | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| **STEPHEN MYERS,** | ) | **MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant Stephen Myers ("Mr. Myers"), by and through undersigned counsel, hereby submits his Sentencing Memorandum for this Court's Consideration in regard to the December 18, 2024, sentencing hearing set in the above-captioned matter.  Mr. Myers requests this Court to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3555, while considering that (1) Mr. Myers has accepted full and complete responsibility for his conduct in this matter, (2) his conduct in this matter is inconsistent with who he is as a person, and (3) he presents with very little prior criminal history.

The reasons in support of this request are set forth more fully in the attached Memorandum in Support, which is incorporated herein by reference.

Respectfully submitted,

/s/ Christopher M. Kelley
Christopher M. Kelley (0088452)
55 Public Square – STE 2100
Cleveland, Ohio 44113
Office: (216) 241-5040
Fax: (216) 359-8694
ckelley@thomasgkelleylaw.com

*Counsel for Defendant Steven Myers*

## MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

Steven Myers ("Mr. Myers") never envisioned he would become a drug dealer.  Indeed, he planned on becoming a nurse because he enjoyed interacting with and helping people.  Moreover, Mr. Myers has no prior juvenile criminal adjudications and presents for the purpose of this sentencing hearing with very little prior criminal history.

Circumstances played a large part in Mr. Myers' conduct.  As set forth more fully below, Mr. Myes had bed been working at the Cleveland Clinic but was laid off due to the Covid-19 pandemic.  Needing money to support his family, Mr. Myers sold drugs.  It is a decision he profoundly regrets.

In this matter, Mr. Myers was trafficking fentanyl, a particularly dangerous narcotic, which is currently ravaging communities in and around Northeast Ohio.  As such, Mr. Myers certainly understands and appreciates he needs to be held accountable for his actions.  But Mr. Myers does want to place his involvement in this matter into some context, certainly not to diminish the seriousness of his conduct, but rather to emphasize he never routinely trafficked in fentanyl – or any other narcotic – in such large amounts as he did in this matter.  But, of course, trafficking in fentanyl in any amount is unacceptable and should be punished accordingly.  Mr. Myers acknowledges and accepts this fact.  The purpose of this Sentencing Memorandum is to emphasize that (1) Mr. Myers has accepted full responsibility for his conduct in this matter, (2) his involvement in this matter is contrary to who he is as a person, and (3) he presents with very little prior criminal history.

### II.      BACKGROUND

1

In this matter, Mr. Myers engaged in three controlled purchases of pills containing fentanyl.  The first and second controlled purchases involved pills containing 48.935 grams and 106.799 grams fentanyl, respectively.  (R. 17: Plea Agmt, PageID 67).  The third controlled buy involved pills containing 310.5 grams fentanyl.  *Id.* at PageID 68.  Following the third control purchase, a search warrant was executed for Mr. Myers' residence, which resulted in 56.815 grams fentanyl being recovered.  *Id.*

A four-count Indictment was returned against Mr. Myers charging him with distribution of fentanyl (Counts 1-3) and possession with intent to distribute fentanyl (Count 4). (R.1: Indictment, PageID 1-3).  Mr. Myers has admitted and taken full responsibility for his conduct in this matter.

Mr. Myers executed a written plea agreement and accepted responsibility for all of the drugs involved in this matter.  The parties agreed that the amount of drugs Mr. Myers distributed and possessed was at least 400 grams but less than 1.2 kg of fentanyl, which corresponds to a base level of thirty (30) under the guidelines.  (R. 17: Plea Agmt, PageID 65).

A presentence investigation report ("PSR") was prepared and set Mr. Myers' base offense level at 32.  (R. 19: PSR, PageID 97).  The basis for the departure from the parties' agreed base offense level of 30 is what the PSR writer determined to be the presence of fentanyl analogues in some of the drugs recovered.  *Id.* at PageID 105.  Mr. Myers has objected to the base offense level of 32 as set forth in the PSR.  *Id.* at PageID 112.

Mr. Myers has remained on bond during the pendency of this matter.  Importantly, he has remained compliant with all conditions of pretrial supervision, besides obtaining employment. (Ex. 19: PSR, PageID 94).  He has verified that he has applied for jobs, but he has been unable to

obtain employment due to the pendency of this matter.  *Id.*  Nevertheless, Mr. Myers has been working part-time at DoorDash to provide some income.  *Id.* at PageID 104.

### III.    OBJECTION TO THE PSR'S CALCULATION OF THE GUIDELINES

Mr. Myers objects to the PSR application of the fentanyl analogue guidelines instead of the fentanyl guidelines.  As noted, the PSR determined Mr. Myers' base offense level is 32 based on the quantity of the drugs recovered in this matter.  (R. 19: PSR, PageID 97).  Included in the quantity of drugs recovered were 310.5 grams of a mixture of fentanyl, which also included the presence of p-Flurofentanyl, and 49.442 grams of a mixture of fentanyl, which also included the presence of p-Flurofentanyl.  *Id.* at PageID 95-96.

Counts 1-4 of the Indictment do not charge Mr. Myers with distribution and intent to distribute fentanyl analogue but rather fentanyl.  (R.1: Indictment, PageID 1-3).  Moreover, the parties' negotiated plea agreement included an agreed and stipulated guidelines computation that "the amount of drugs distributed and possessed with the intent to distribute by [Mr. Myers] was at least 400 grams but less than 1.2kg of fentanyl, which corresponds to a base level of 30 pursuant to U.S.S.G. § 2D1.1(c)(5)."  (R. 17: Plea Agmt, PageID 65).  Accordingly, using and applying the fentanyl guidelines, Mr. Myers' base offense should be calculated at 30, not 32.

### IV.    A SENTENCE AT OR NEAR THE MINIMUM IS SUFFICIENT AND APPROPRIATELY CONSIDERS MR. MYERS' MITIGATING FACTORS

In fashioning an appropriate sentence, courts must consider the factors enumerated in 18 USC 3553(a) to determine if an adjustment is warranted. *United States v. Booker*, 543 U.S. 220, 245-46, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). 18 U.S.C 3553(a) requires the Court to impose a sentence that is sufficient, but not greater than necessary and lists factors to be considered in imposing a sentence.  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect

3

the seriousness of the offense, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed training, care or treatment; (3) the kinds of sentences available; (4) the kinds and range of sentence under the guidelines; (5) pertinent policy statements by the Sentencing Commission; and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct", and (7) the need to provide restitution.

Following *Booker* and its progeny, the sentencing court may now consider even those mitigating factors that the advisory guidelines prohibit, *e.g.*, poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. *See United States v. Ranum*, 353 F. Supp.2d 984 (E.D. Wisc. 2005) ("the guidelines" prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the Defendant ... thus, in cases in which a Defendant's history and characteristics are positive, consideration of all of the Section 3553(a)(1) factors might call for a sentence outside the guideline range"). As set forth below, although the trafficking of fentanyl is a very serious offense, the circumstances of Mr. Myers' personal life and his involvement in this matter warrant a sentence at or near the minimum.

Here, Mr. Meyers presents with significant mitigating factors. Mr. Myers is thirty-three years old. He grew up in a very close, loving family. He never witnessed any substance abuse or violence growing up and has fond memories from his childhood of taking family vacations and spending time with his family. (R. 19: PSR, PageID 102). Furthermore, his mother described Mr. Myers as a "'lovely child' who never caused any trouble." *Id.*

4

Mr. Myers has one child, a daughter.  He married in 2020 but became separated in 2023,

largely resulting from financial strains and pressure caused by the Covid-19 pandemic.

Family has always been and remains important to Mr. Myers.  His niece Jaiyana

Eggleston writes:

> [Mr. Myers] has aways been a role model in my life, with my father not being present he quickly stepped in to take his place.  I personally saw a maturity in [Mr. Myers] when his daughter Santana was born.  I've watched him bond with her, love her, and care for her so much that she has become permanently attached to him.  Growing up [Mr. Myers] always looked out for me buying me whatever I wanted or needed, taking me places, and simply talking to me.

(Ex. A: Jaiyana Eggleston Letter).

Mr. Myers has always been a hard worker.  His mother writes that Mr. Myers had his first

job at 15 working at Taco Bell.  (Ex. B: Letter from Darlene Seats-Myers).  From there, he

worked several jobs.  *Id.*  The PSR prepared for sentencing in this matter demonstrates a history

of consistent employment:

**Employment Record**

57.   The defendant reported the following employment history dating back ten years:

| Employer | Start Date | End Date | Position / Type of Work | Salary / Wage | Reason for Leaving |
|---|---|---|---|---|---|
| Tru by Hilton | January 2023 | July 2023 | Maintenance | $15.00/hour | Did not like it, worked there while on probation |
| Cleveland Clinic | February 2018 | 2020 | Patient transport | $18.00/hour | Laid off during COVID-19 pandemic |
| O'Reilly Auto Parts | 2015 | 2018 | Parts driver | $10.00/hour | Left for job at the Cleveland Clinic |
| Home Depot | 2014 | 2015 | Stocking | $10.00/hour | Left for better pay |

(R. 19:PSR, PageID 104).

5

Mr. Myers has always enjoyed helping others.  For this reason, he wanted to become a nurse.  As such, from 2018 through 2020, Mr. Myers worked at the Cleveland Clinic Foundation transporting patients to and from their appointments.  Furthermore, in 2020, he enrolled at the Hondros School of Nursing to complete an LPN program.  By all accounts, Mr. Myers was on a path to becoming a nurse and working in a field where he could help others, which is what he had always wanted to do.

In 2020, the Covid-19 Pandemic upended Mr. Myers' life.  He lost his job at the Cleveland Clinic and had no income.  Without an income, he could no longer afford to remain in nursing school and therefore withdrew with the expectation of later returning to complete his degree.  He attempted to find work, but due to the pandemic, everything was shut down and nobody was hiring.  It was at this time that he sold drugs for the first time in his life.  Shortly thereafter he was arrested and then pled guilty to trafficking in Cuyahoga County Common Pleas Court Case No. CR-22-676003-A.

Selling drugs was to be a short-term plan.  Mr. Myers wanted to make enough money to pay bills and then stop.  But he did not.  He struggled finding employment due to his recent conviction and did not have enough money to pay his bills and support his family.  He started selling drugs again.  He wishes he never did and understands he needs to be held accountable for his choices and actions.

Mr. Myers's total criminal history score is one (1).  (R. 19:PSR, PageID 100).  He has no prior juvenile adjudications, and other than driving offenses, his only conviction is the aforementioned conviction in 2022.  *Id.* at PageID 99-100.  Consequently, Mr. Myers has a criminal history category of I.  *Id.* at PageID 101.  The PSR writer acknowledges that Mr. Myers "clearly demonstrated acceptance of responsibly for the offense" and "has assisted authorities in

the investigation of prosecution of [his] own misconduct by timely notifying authorities of the intention of enter a plea of guilty", which has resulted in the offense level being decreased by three levels. *Id.* at PageID 98. Finally, and importantly, Mr. Myers has remained fully compliant with all of the terms and conditions of his bond during the pendency of this matter. *Id.* at PageID 94.

Mr. Myers first started using Marijuana at the age of sixteen. (R. 19:PSR, PageID 103. He has largely used Marijuana daily since this time but has stopped during the pendency of this matter. *Id.* All of his submitted urinalyses have been negative. *Id.* He acknowledges he has an addiction and that he uses Marijuana too much. *Id.* As such, he has further acknowledged that he would benefit from some type of substance abuse treatment. *Id.*

Mr. Myers acknowledges that his decisions and conduct have likely foreclosed any further opportunity in the nursing field. His long-term goal is to obtain a CDL license and find employment as a truck driver. After serving his sentence, he plans on working and focusing on his family. And, as the letters provided in support indicate, he has a strong support structure that will aid him in accomplishing his goals.

As argued herein, this Court should accept the terms of the parties' negotiated plea agreement. Accordingly, for the purposes of sentencing, Mr. Myers would then present with a total offense level of 27 and a criminal history category of I, thereby providing a guideline range of 70-87 months. The PSR notes:

> During the last five fiscal years (FY2019-2023), there were 320 defendants whose primary guideline was §2D1.1 and Fentanyl* was the primary drug type, with a Final Offense Level of 27 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 319 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 50 month(s) and the median length of imprisonment imposed was 48 month(s).

(R. 19:PSR, PageID 111.  Finally, the PSR writer determined that Mr. Myers would not have the ability to pay any discretionary fine within the applicable guideline range.  *Id.* at PageID 105.

Mr. Myers has sincere remorse for his conduct in this matter and the poor choices he has made.  He has accepted full and complete responsibility for his conduct and acknowledges he needs to be held accountable for this conduct.  As set forth herein, Mr. Myers requests that this Court give due consideration to all of his mitigating factors when determining an appropriate sentence.

## V.      CONCLUSION

Based on the foregoing reasons, Mr. Myers respectfully requests that this Court impose a sentence that is sufficient but not greater than necessary to achieve the statutory goals of sentencing and that considers Mr. Myers' mitigating factors set forth herein.

Respectfully submitted,

/s/ Christopher M. Kelley
Christopher M. Kelley (0088452)
55 Public Square – STE 2100
Cleveland, Ohio 44113
Office: (216) 241-5040
Fax: (216) 359-8694
ckelley@thomasgkelleylaw.com

*Counsel for Defendant Steven Myers*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which then sent notification of such filing to all counsel of record.

/s/ Christopher M. Kelley
Christopher M. Kelley (0088452)
*Counsel for Defendant Steven Myers*

EXHIBIT

A

November 14th, 2024

To Whom it may concern:

I am writing this letter to talk about my uncle Stephen Myers.
My uncle has always been a role model in my life, with my father not being present he quickly stepped in to take his place. I personally saw a maturity in my uncle when his daughter Santana was born. I've watched him bond with her, love her, and care for her so much that she has become permanently attached to him.

Growing up my uncle always looked out for me buying me whatever I wanted or needed, taking me places, and simply talking to me. I'm not completely sure what he did but I know it was wrong.

Santana and I would be emotionally damaged if he had to go away. Santana and I both understand that he has to be held accountable for his actions but we pray that you find it in your heart to give mercy when sentencing him.

Sincerely,

Jaiyana Eggleston

EXHIBIT

**B**

November 14,2024

To Whom It May Concern:

I'm writing this letter regarding my son Stephen Myers.

I would like to start by saying that Stephen never gave me any trouble growing up.  He was always happy and respectful. He has a strong family background, an older sister and a 6 year old daughter that will be heartbroken if she goes a long period of time without her dad.  He is a big part of her life.

Stephen had his first job at 15 working at taco bell.  From there he worked several jobs. He was employed at Cleveland Clinic and was enrolled in nursing school before covid and everything changed.

I'm not sure how he got off track and was not aware of what he was doing. Needless to say I'm devastated.  My husband and I worked to provide all of his needs growing up and we taught him to have good morals.  I understand what he has done and has to be held accountable, all I ask is if you could show leniency when sentencing him.  Stephen has never been in trouble before and I pray he has learned his lesson.


Respectfully,

Darlene Seats-Myers

EXHIBIT
C

11-15-24

To Whom It May Concern, I am writing this letter in reference to Stephen Myers. His best qualities are he is hardworking, humble, very family oriented, and just a average good guy. His presence is definetly needed not only in my life but his family. Although Stephen now at the age 32 has found himself in trouble. Prior to this he was never in trouble I think that's important to note. We are all human, we all make mistakes. Those mistakes don't define us, but they serve as lessons to make better choices for our future. Stephen has accepted responbility for his actions, I ask whatever punishment that will be given to him that if possible could be the minimum of the states guideline or least amount of time given. So stephen can contie his life and become a successful citizen of this community. He has aspirations to obtain his CDL and conutie to be a good father to his daughter.

Sincerley, Tori welz